O'BRIEN, J., concurs in the result.    LAWRENCE, J., concurs.

---

## KING *et al.* v. JACOBSON *et al.*

*(Supreme Court, General Term, First Department. February 18, 1892.)*

1. REPLEVIN—SALE OF GOODS—FRAUDULENT REPRESENTATIONS.
    Defendants procured credit for goods on the representation that their liabilities were $2,000 and their assets $20,000. About six months afterwards they confessed judgments in favor of third persons, on notes, several of which were executed on the same day. One of the judgments was for money borrowed before the representations in question. The goods were procured ostensibly for manufacture, but

were sold to others below cost. *Held*, in replevin to recover the goods, sufficient to show fraud in their procurement.

2. SAME—EVIDENCE.

   One alleging himself to be a *bona fide* purchaser from defendants having been detected on the trial in gross prevarication respecting his dealings with defendant relating to the goods in question, the jury properly rejected his claim.

Appeal from circuit court, New York county.

Action by Edward J. King, Jr., and another against Albert Jacobson and others, to recover a lot of sealskins obtained from plaintiffs under false representations. From a judgment for plaintiffs, defendants appeal. For former report, see 12 N. Y. Supp. 584. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, J.

*Howe & Hummel*, for appellants. *Blumenstiel & Hirsch*, for respondents.

VAN BRUNT, P. J. This appeal has been before the court upon a previous occasion, and it was disposed of upon the questions of law involved in the case, in view of the fact that the case did not profess to contain all the evidence, and which, it appears, it did not. A motion having been made for a reargument, leave was granted to resubmit the case for further settlement, and, after settlement, for such reargument. It is stated in the points for the defendant that the questions to be reviewed on this appeal are: *First*, upon the motion made to dismiss the complaint which brings up the question as to whether, under the plaintiffs' evidence in the case, any case whatever was made out for the plaintiffs, and also in respect to the charge of the court; and upon the appeal from the order denying the motion for a new trial it is contended that the verdict was not only against evidence and against law, but against the weight of evidence. The questions in regard to the charge were disposed of upon the previous appeal, and it is not necessary to reconsider them upon this reargument. The principle is well settled that, where a plaintiff proves title to property, and it is found in the possession of a third party, such third party is bound to show himself entitled to such possession by reason of being a *bona fide* purchaser for value. A very considerable portion of the argument of the appellant is based upon the fact that at the time of the sale of the goods in question the purchasers gave notes, which were not offered to be returned, either at the time of the demand or upon the appeal. An examination of the record shows that no such question was raised upon the trial. *Non constat*, if it had been raised, the plaintiffs would have produced the notes, and offered their surrender at the trial, which would have been a sufficient compliance with the requirements of the law. The claim that there was not sufficient evidence that the purchasers of the goods were guilty of false and fraudulent representations, so as to justify the jury in finding a verdict in favor of the plaintiffs, cannot certainly be sustained upon the record as it now stands. It appears that the purchase in question was made in November, 1887, and that representations were made by one of the purchasers in order to induce a credit, that their assets amounted to $20,000, and their liabilities to $2,000; and that, relying upon these representations, credit was given. In June, 1888, the purchasers failed, and on the 8th of June, 1888, divers judgments were entered against the purchasers by confession for large sums of money, and their stock was levied upon by executions issued upon said judgments, and the funds realized were not sufficient to pay the same. These confessions were all upon notes, several of them bearing the same date, namely, the 7th of June, 1888, evidently made for the purposes of the judgments. It appears from the evidence that at least one of these judgments was for borrowed money, loaned long before the representations in question; and it further appears that at the time of the purchase of these goods it was stated by one of the purchasers that they were needed for manufacturing in the next month, whereas they were not manufactured at all, but were, even as claimed by the defendants, sold at a price considerably

below their cost, in the month of January following. These facts certainly were evidence not only sufficient to justify the jury in finding that at the time of the purchase there was no intention to pay, but almost irresistibly led to that conclusion.

The next question is whether the defendant Bernstein has shown that either he or his predecessor in title were *bona fide* purchasers of the goods in question. It appears from the evidence that it was claimed that on the 6th of January, 1888, the purchaser sold the goods in question to M. Wein & Co., then doing business in Chicago, where the purchasers also did business, and that $1,455 was paid therefor; and checks were introduced in evidence for that amount. But it appears from the examination of Wein that this claim of sale was probably a pure fabrication, and gotten up for the occasion. After having given some testimony, which was somewhat incredible, in respect to a transaction with the Chicago Trust & Savings Bank, the witness testified that the sale of these goods was a *bona fide* sale to him in perfect good faith; that he bought and paid for them, and that he had also bought some muskrat skins; but that he bought no other sealskins, and that he had had no transactions with the defendants Jacobson & Perlson, the purchasers of the goods from the plaintiffs, since the last transaction of the purchase of these particular sealskins in January. He was then shown a paper bearing date the 22d of May, 1888, whereby it appeared that he had loaned $800 in cash on the 66 sealskins, same as bought from Jacobson & Perlson, and further agreed to pay $800 more in case the goods should be sold by him prior to the 1st of October, 1888. He then testified that these were the same sealskins which he stated he had bought outright on the 6th of January, and paid checks for them; and then four months afterwards he issued the agreement in question. Then the witness, finding in what a predicament he had placed himself, says: "I said a moment ago I bought them outright, but that is not the same transaction we have got here. They are not the same sealskins, but are different ones." The prevarication was so apparent that it was no wonder that the jury placed no credence at all upon the testimony of the witness. The evidence further showed that the witness consigned these goods to the defendant Bernstein, in the city of New York, and it was claimed upon the part of Bernstein that he had advanced divers sums of money to Wein upon the credit and faith of these goods. But it is apparent that this was only another attempt to cover up the fraud which had been perpetrated in the disposition of the goods by Jacobson & Perlson, as Wein and Bernstein fail to agree in respect to the advances which were made upon these goods, Wein stating that he first drew for $300, and Bernstein stating that he drew for $200; Wein stating that Bernstein advanced $1,200 odd, and Bernstein stating that he had advanced $1,600, although in another place he mentioned the amount of his advances at $1,236; but when he came to give the particulars they amounted to nearly $1,600. Under these circumstances, we see no reason for interfering with the verdict of the jury. There was certainly sufficient evidence upon which the jury might find that this whole procedure was a fraud from beginning to end. Upon the whole case, therefore, we are of the opinion that the judgment should be affirmed, with costs.